FLOYD EPLING et al.

v.

· JOSEPH DICKSON, Receiver, et al.

*Opinion filed December 22, 1897.*

1. EMINENT DOMAIN—*constitution provides a lien for protection of property owners.* Section 2 of article 13 of the constitution, which provides that private property shall not be taken or damaged for public use without just compensation, has the effect of giving a lien to the property owner for his protection, and secures to the owner his right to compensation until the same has been paid.

2. SAME—*rights of property owners are protected as against subsequent purchasers.* Where an owner of property abutting upon a street on which a railroad is constructed has reduced his claim for damages to judgment, his rights will be protected, under section 2 of article 13 of the constitution, as against subsequent purchasers or mortgagees of the railroad property.

3. LIMITATIONS—*when five-year limitation concerning actions for damages to property does not apply.* Section 15 of the Limitation act, (Rev. Stat. 1874, p. 675,) relating to the five-year limitation concerning actions for damages to property, has no application to a proceeding in equity to enforce against subsequent purchasers and mortgagees of a railroad, judgments previously recovered by owners of property for damages caused by the construction and operation of the railroad.

4. JUDGMENTS AND DECREES—*condemnation judgment may be enforced at any time within twenty years.* The fact that an ordinary judgment ceases to be a lien on land after seven years, does not prevent property owners who have recovered judgments against a railroad for damages to their property from its construction upon the street on which their property abutted, from enforcing such judgments, at any time within twenty years, by an intervening petition in a proceeding in equity to sell the railroad to pay claims of creditors and for foreclosure.

5. INTEREST—*judgments for damages to private property taken for public use draw interest.* Section 3 of the act on interest controls judgments for damages to private property taken or damaged for public use, the same as it does other judgments therein mentioned.

6. DAMAGES—*costs incurred in obtaining judgment for damages to private property are part of the judgment.* Costs incurred by a property owner in obtaining a judgment for damages to his property taken or damaged for public use are a part of the judgment, and must be allowed as part of the just compensation to which he is entitled.

*Dickson* v. *Epling,* 61 Ill. App. 78, reversed.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding.

The appellants, Floyd Epling and others, were owners of different lots abutting on a street in the town of Waverly on which the tracks of the St. Louis, Jerseyville and Springfield Railroad Company were constructed. After the track was finished the appellants brought separate actions at law for the injury to said lots, and on June 20, 1882, recovered judgment against the railroad company for various sums. Executions were issued on all of the judgments and returned *nulla bona*. In 1888 the St. Louis, Alton and Springfield Railroad Company acquired the railroad property, franchises, etc., of the St. Louis, Jerseyville and Springfield Railroad Company, and executed a first mortgage thereon to the Farmers' Loan and Trust Company and a second mortgage to the Atlantic Trust Company, both mortgages being to secure certain of its bonds issued to said trust companies, respectively. In October, 1890, B. F. Johnson and others filled a bill in chancery in the circuit court of Sangamon county, alleging said St. Louis, Alton and Springfield Railroad Company was indebted to them for work done and material furnished, etc., upon the road, and praying for liens and equitable relief, etc. Joseph Dickson was appointed receiver in the course of proceedings under this bill, and the railroad property placed in his hands to be operated and administered under the order of the court. The mortgagees before named filed intervening petitions in the cause, asking decrees of foreclosure and sale of the property. The appellants also filed intervening petitions, in which they allege their judgments have not been paid and are liens upon the property in the hands of the receiver, and prayed for an order requiring the receiver to pay the same, with interest and costs, and that he be restrained

from using and operating the railroad along and upon said street until such payment be made.

Upon a hearing the circuit court held a lien existed upon such property in favor of the appellants for the amount of damages inflicted upon their property, respectively, by the construction of the road, and that it was superior and paramount to the rights of subsequent purchasers, mortgagees and creditors, and was not defeated by the Statute of Limitations. To reverse this decree an appeal was prosecuted to the Appellate Court, where the decree was reversed and the cause remanded, with directions to dismiss appellants' petitions. To reverse that judgment appellants, the intervening petitioners, have appealed.

WILLIAM L. GROSS, for appellants.

STEVENS & LANPHIER, ELENEIOUS SMITH, and EDWARD S. ROBERT, for appellee.

Mr. JUSTICE CRAIG delivered the opinion of the court:

As has been seen, after the appellants obtained judgment for damages to their property against the St. Louis, Jerseyville and Springfield Railroad Company, another corporation, the St. Louis, Alton and Springfield Railroad Company, acquired the property and franchise of the first named company, and executed two mortgages, one to the Farmers' Loan and Trust Company and another to the Atlantic Trust Company, and the question presented by the record is, whether appellants are entitled to priority in the payment of their judgments, as against the mortgagees, out of the fund arising from the sale of the railroad property on the foreclosure of the two mortgages.

Section 2 of article 13 of the constitution provides that private property shall not be taken or damaged for public use without just compensation. Such compensation, when not made by the State, shall be ascertained by a

jury as shall be prescribed by law. Here appellants' property was damaged by the construction of the railroad, within the meaning of the constitution, and the several lot owners abutting on the street where the railroad was constructed reduced their damages to judgment, and under the constitution their rights were preserved even as against subsequent purchasers of the railroad property. This was settled in *Penn Mutual Life Ins. Co.* v. *Heiss*, 141 Ill. 35. That was a case in its facts quite similar to the one here involved, and in the discussion of the question whether a claim for damages could be defeated where the railroad had passed into the hands of another railroad company, it is among other things said (p. 62): "As we have seen, it is not in the power of the railroad, by alienation or otherwise, to defeat this constitutional guaranty, and the alienee, purchaser or successor will be required to take notice of the provisions restricting the power to take or damage private property for public use, and be held to take subject to the burthen cast upon the railroad by, through or under which the interest is acquired."

It is, however, claimed that appellants are barred by the Statute of Limitations, section 15 of which reads as follows: "Actions on unwritten contracts, expressed or implied, or on awards of arbitration, or to recover damages for an injury done to property, real or personal, or to recover the possession of personal property, or damages for the detention or conversion thereof, and all civil actions not otherwise provided for, shall be commenced within five years next after the cause of action accrued." (2 Starr & Curtis, p. 1552.)

If this were an action at law to recover damages against the railroad company, and more than five years had intervened after the damages had been sustained before the action was brought, the statute might be relied upon as a bar to the action, as was held in *Chicago and Eastern Illinois Railroad Co.* v. *McAuley*, 121 Ill. 160. But here an

action at law to recover the damages was brought and judgment rendered within five years from the time the railroad was constructed and the damages were sustained. This is not an action to recover damages for an injury done to property, within the meaning of the Statute of Limitations, but, on the other hand, the proceeding is one to enforce payment of a judgment heretofore rendered in an action to recover damages to property sustained by the construction and operation of a railroad, and the five year statute of limitations has no application to a proceeding of this character. It is true that, under section 1 of the act on judgments, decrees and executions, in an ordinary case a judgment will cease to be a lien on real estate of the person against whom it may be rendered, upon the expiration of seven years from the date of the judgment; but that does not deprive appellants of the right to enforce payment of their judgments, in a proper proceeding, after the expiration of seven years. Section 26 of the Limitation act provides: "Judgments in any court of record in this State may be revived by *scire facias*, or an action of debt may be brought thereon within twenty years next after the date of such judgment, and not after." Under this section of the statute appellants' judgments were not barred after seven years, but an action of debt might be brought upon them or they might be revived by *scire facias* at any time within twenty years.

The fact that the right of a judgment creditor to enforce collection of a judgment by execution may be limited to seven years, and that period having elapsed in this case, does not, in our opinion, cut off all equitable right of appellants, and deprive them of all remedy to enforce their rights in a proceeding in a court of equity like the one in question. The lien relied upon here is conferred by the constitution in language not of doubtful meaning. As has been said, that instrument declares: "Private property shall not be taken or damaged for public use without just compensation." This provision

of the constitution provides a lien for the protection of the property owner. It confers security on the property owner to his property until compensation has been made. The lien or right conferred on the property owner does not depend upon any equitable proceeding or whether an execution may or may not be issued, but it rests upon a principle engrafted on the organic law,—that the property of the private citizen shall not be taken or damaged for public use without just compensation. Here the appellants, as they had the right to do, had their damages ascertained in the manner provided by law. These damages were reduced to judgment, and no reason is perceived why their judgments may not be enforced at any time within twenty years from the time when rendered.

In the enforcement of the lien upon the railroad property no execution was required in the hands of an officer. Appellants, after their damages had been reduced to judgment, made an effort to collect their judgments by execution; but in this they failed, and their executions were returned no property found. The St. Louis, Jerseyville and Springfield Railroad Company continued to operate its line of road until May, 1888, when the railroad was sold under a decree of the Circuit Court of the United States for the Southern District of Illinois, and passed into the hands of the St. Louis, Alton and Springfield Railroad Company. This company went into possession of the line of road and continued to operate it, but the damages appellants had sustained by the construction and operation of the road were not paid; but two years after the road had passed into the hands of the latter company, appellants, finding the line of railroad and all of the property of the company under the control of a court of equity and about to be sold for the payment of creditors, intervened, and, invoking the equitable powers of the court, asserted the right to the compensation guaranteed by the constitution. In the intervening petition will be found all the averments required in a *scire facias*

to revive a judgment, and if it was necessary to protect the equities of appellants, a court of equity might, as suggested by counsel, regard the petition of the intervening petitioners as in effect an application for an equitable revival of their judgments. But, independently of that view, we think, as appellants' judgments were not barred by any statute of limitations, they were entitled, when a court of equity had in its hands the assets of the railroad company for distribution, to come in and receive the compensation they were entitled to under the constitution.

The court, in its decree, allowed appellants a recovery for the face of the several judgments but refused to allow interest on the judgments, and also refused to allow the costs for which judgment was recovered on the several judgments. Section 3 of chapter 74 of the statute (1 Starr & Cur. 1359,) in force at the date of the rendition of the several judgments, provides that judgments shall draw interest at the rate of six per cent per annum from the date until satisfied. No exception is made in the statute where a judgment has been rendered as compensation for lands taken or damaged for public use, and in the absence of an exception the statute which controls judgments in other cases must control here. Moreover, it has often been held that a final judgment for the amount found to be due as just compensation will draw interest. *Cook* v. *South Park Comrs.* 61 Ill. 115; *City of Chicago* v. *Palmer*, 93 id. 125.

The circuit court also held that the costs for which appellants obtained judgment against the railroad company when they obtained their several judgments for compensation was no part of the just compensation, within the meaning of the constitution, and no recovery could be had for such costs. Where private property is taken or damaged for public use, just compensation cannot be made to the property owner if he is compelled to prosecute in the courts for his just rights at his own costs. The costs in the present case followed the several judg-

ments. They were a part and parcel of the judgments, and we see no reason why appellants were not entitled to a decree for the costs as well as for the rest of their judgments.

The judgments of the Appellate and circuit courts will be reversed and the cause remanded to the circuit court, with directions to enter a decree in favor of appellants, in conformity to the views here expressed.

*Reversed and remanded.*

Mr. JUSTICE BOGGS, having passed upon this case in the Appellate Court, took no part in this decision.